## E. P. ADAMS *vs.* BISHOP & CO.

### IN EQUITY. BEFORE HARRIS, J.

### AUGUST, 1874.

The firm of Walker & Allen made a voluntary assignment to plaintiff for benefit of creditors, which was recorded at 2 P. M.; at 6 A. M. on the same day the firm had transferred to defendants certain sugar on board a steamer in port, as per an agreement made several days before, by which defendants, as bankers, allowed said firm to draw $3,300, to be paid in sugar upon the next arrival of the steamer from the sugar plantation:

Held, the transfer of the sugar was not void and in fraud of creditors, it being made in good faith, and defendants not being certain that Walker & Allen were insolvent.

The provisions of our Bankruptcy Statutes, and the theory of the laws of other countries as to voluntary assignments, held not to apply to voluntary assignments in this Kingdom.

The bill in this case alleges in substance as follows: That the firm of Walker & Allen, of Honolulu, being insolvent on

the 8th day of June of this present year, made a general assignment to the plaintiff, for the benefit of creditors; that on the 25th day of September, 1872, the said Walker & Allen had entered into an agreement with Messrs. Welsh & Co., of San Francisco, and Messrs. Welsh, Rithet & Co., of Victoria, to consign to them all the sugars of the plantations of which they were agents, for advances made and to be made; and they further aver that at the date of the assignment aforesaid the agreement with Messrs. Welsh & 'Co. was in full force and effect.

The bill further avers that at the time of the agreement with Messrs. Welsh & Co., and at all times thereafter up to the date of the assignment by Messrs. Walker & Allen to the plaintiff, Messrs. Walker & Allen were agents for Thomas Spencer, sugar planter at Hilo, Island of Hawaii, who at the date of the said assignment was largely indebted to Messrs. Walker & Allen for advances made to carry on his plantation, and was himself insolvent; and during all this time T. Spencer was under arrangement to consign to Messrs. Walker & Allen all the produce of his plantation in consideration of their loans and advances.

The bill further avers that at the time of the assignment the firm of Walker & Allen was indebted to the defendant in the sum of $3068.04; and on the 7th day of June that the said Walker & Allen delivered to the defendant a paper writing, order or receipt for certain sugars, the product of Spencer's plantation, which had arrived that day (Sunday) per steamer Kilauea; and at 6 o'clock in the morning, on Monday, 8th of June, Walker & Allen caused an entry to be made in their books purporting to show a sale of these sugars to the defendant for $3701.15; and further the defendant though requested has refused to deliver over any portion of the sugar or proceeds, except the sum of $633, which was the value of the sugar delivered to him over and above the sum of $3701.15 before mentioned. The bill further avers that the defendants are bankers, and the purchase and sale of sugar is not within their

ordinary business, and on the 7th day of June aforesaid they were acquainted with the agreements with Welsh & Co., and Welsh, Rithet & Co., with the insolvency of Walker & Allen as well as T. Spencer, and that the sugar was from Spencer's plantation; that Walker & Allen were about to assign; and it is further averred that the price at which the sugar was quitted to the defendant by Walker & Allen was very inadequate, and it is submitted that such transfer and taking possession of the sugar was in fraud of the rights of the general creditors of Walker & Allen, and void as against said creditors, or was a means of securing the defendants in the payment of a loan or advance of money made to Walker & Allen, and therefore in fraud of the rights of general creditors and void as against them. The defendants in their answer deny any knowledge of insolvency of Walker & Allen, although they admit they knew that they were indebted to many other persons. They say they have no knowledge whether or not the agreement of Walker & Allen with Welsh & Co. was in force at the time of the agreement, and submit that the insolvency of Spencer could not affect them, the defendants; they deny that Walker & Allen were indebted to them (defendants) at the time of the assignment; say that the sugar was delivered to them as charged in the bill, and though they are not accustomed to buy sugar, they have done so from the firm of Walker & Allen, and did purchase this sugar in good faith, and admit that they refused to surrender the same; aver that they took and retained possession of the sugar by virtue of two contracts dated the 1st day and 3d day of June last, which contracts read as follows:

"Honolulu, June 1st, 1874.

"We have received from Messrs. Bishop & Co., permission to check upon them for cash to the amount of $2500, in payment for sugar this day sold to them for an equal amount at the following valuation:

"Viz: No. 1 sugar, in kegs, at 4½ cents per pound; No. 2 sugar, in mats, 3 cents per pound, to be delivered to them on the return of the steamer Kilauea from Hawaii, within ten

days from this date. The sugar is now made and in possession of Thomas Spencer, in Hilo, Hawaii.

"(Signed)                    WALKER & ALLEN."

"In addition to the above amount we have received from Messrs. Bishop & Co., the sum of $800, which amount to be paid in sugars as above.

"(Signed)                    WALKER & ALLEN.

"Honolulu, June 3d, 1874."

It does not appear to me that the lowness of the price at which this sugar is quitted is such as to give any coloring to the transaction, one way or the other. The price was 3,700 pounds of No. 1 sugar at 4½ cents, and 5,400 pounds of an inferior quality at 3 cents. Mr. P. C. Jones says that on the first of June such sugar as the best was worth cash at 5 cents, and he would have given it himself. But it is said that the sugar was not to be delivered until the 8th; an opportunity for shipment immediately frequently has great influence on the price.

Mr. E. P. Adams, the plaintiff, says, that in his capacity as a commission merchant he offered the same sugar on behalf of Bishop & Co. to several, and among them Mr. Jones' firm (Messrs. Brewer & Co.), eight days afterwards, and that the best price he could get was 4¾ for the first sugar, and 3¾ for the second, which he obtained from Messrs. H. Hackfeld & Co.; thus showing a difference of only a quarter of a cent on the largest and most important part of the sugar under contemplation. This surely is not such a disparity as of itself to give a fraudulent color to the transaction. Mr. Allen in his testimony says, that the transaction was in good faith, and that he did not give Mr. Bishop to understand that he was insolvent, though he told him that he was "hard up," that is to say, much pressed for money, but was intending to keep his concern going as long as he could.

The agreement with Welsh & Co., and Welsh, Rithet & Co., offered in evidence by the plaintiff, contains nothing of itself to give any notice that they had any claim on the sugar in ques-

tion. It is dated 25th of September, 1872, and recites that Messrs. Walker & Allen have the control of the products of certain plantations, and among them of Spencer's "during the years 1872 and 1873;" and again, "This agreement shall be in force for one year, and until the provisions thereof are fully complied with, and may be continued by consent for a longer period." Mr. Allen says that at the time of the assignment of his firm, they were under contract to ship sugar as in this agreement set forth, but surely there is nothing in the contract itself to give notice to anyone that it had not expired with the year 1873. But suppose the agreement to be in full force—as Mr. Allen says it was,—and that the defendant knew it—which he says he did not,—it is difficult to see how it would help the present plaintiff, who acts for the general creditors. It would simply amount to an agreement with Welsh & Co. to ship the sugar to them to pay their debt, and would not insure the delivery to the general creditors.

It was said at bar in behalf of plaintiff, that it could not be assumed by the Court that the delivery occurred before the assignment, since they both occurred on the same day.

But the whole proof goes to show that the delivery was made first, and the assignment afterwards; as the deed of assignment was not put in evidence, I have had recurrence to the public record, and I find that it was acknowledged 23d June at 2 o'clock p.m. I regard the sale to have been complete on the 3d of June, and the weight of authority goes to that effect. Spencer had written to his agents that he had the sugar ready to send to them; they (his agents) sold it and got the money for it on that day, and Spencer shipped it according to the understanding. The title in this sugar was then passed by a good and valid bargain, which in my opinion would have enabled the defendant, under all the circumstances, to maintain an action against Spencer if he had attempted to withhold delivery. At any rate, Spencer's agents did deliver it, and the money went to Spencer's benefit.

Thus it will be seen that the money was not advanced on

security, and to declare this sale void "would place this defendant in a worse condition than any other *bona fide* creditor," since on the day of the sale he was not a creditor at all, and did not intend to become one.

Again, the sugar was in Spencer's possession, and if he had failed to ship it the respondent could have got it.

If the respondent took possession of the whole invoice, it was because he was told to do so, and he was bound to restore only that which exceeded the quantity which he had purchased, and this he has done. Nor do I see any peculiarity in the business conference on Sunday; the vessel had arrived on Sunday morning with the sugar on board, and would commence discharging early Monday morning, and it would be necessary for someone to be on the wharf to take account of it.

If there was a bill of lading or clerk's receipt which seemed to require to be endorsed, it was but natural it should be done at that moment, so that it might be ready to be acted upon early in the morning. The entry in the book had nothing to do with the defendant, who did not know and may be supposed not to have cared whether they entered it in their books or not. The entry may be presumed to have been made at the convenience of the book-keeper, and to keep the account straight between them and Spencer.

If the Court should hold differently than this, it would follow that every sale made by Messrs. Walker & Allen during the few weeks preceding their assignment would be void—even though made for cash—and purchasers would be obliged to pay for their goods over again. There is no statute in this Kingdom which takes from a person the right to convey a good and valid title to his property, except the Bankrupt Act, Section 978 of the Civil Code, and if persons want to avail themselves of the provisions of that act they must take proceedings under it, and the question would be whether the consideration was *bona fide*—which it was in this case—and whether the defendant had positive notice of insolvency or bankruptcy, which does not mean a suspicion arising from a conviction that the business is

not prosperous, but a notice, a certainty, or a reasonable certainty that a man is bankrupt, so that his act tends to defraud his creditors, or some of them. The reasons which have induced the enactment of statutes of other communities to regulate and control voluntary assignments have never had any existence here, and the reasoning based upon those statutes is entirely inapplicable in this country. Here, the assignee can get no more rights than the assignor had at the time of his assignment; whence it would follow that if the goods in question had been the property of Walker & Allen, instead of Spencer's, their assignee could not have recovered them, because they were paid for and delivered before the assignment. If the creditors were not contented with the condition of the estate, it was in their power, or the power of any one of them, not to accept the assignment, and to take measures to put in force the provisions of the Bankrupt Act as against the insolvent firm.

I take notice of the difference of phraseology in the receipt dated 1st of June, and that dated the 3d; the first "acknowledges the receipt of $2500 in payment for sugar this day sold," and the second acknowledges the receipt of $800, "which amount is to be paid in sugar," but as it would make no difference in my judgment, and was not adverted to at bar, I don't think it necessary to comment upon it. It is obvious that the second payment was intended to be a part of the same transaction as the first.

In conclusion, there is nothing in natural justice that will lead the Court to declare that the transfer of the property in question was contrary to good conscience and void—but quite the contrary,—and the statute law of this Kingdom does not so enact it.

My judgment therefore is that the bill be dismissed with costs.

*A. S. Hartwell,* for plaintiff.

*R. H. Stanley,* for defendant.

Honolulu, August 31, 1874.